UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ELIZABETH ANN RICHMOND, *et al*, | § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. C-07-458 |
| COASTAL BEND COLLEGE DISTRICT, *et al*, | § § § | |
| Defendants. | § § | |

# **MEMORANDUM OPINION AND ORDER ON DISCOVERY MOTIONS**

Pending are several discovery-related motions referred to the undersigned United States Magistrate Judge (D.E. 38, 41, 51, 52, 66, 68). A hearing was held on June 25, 2009.

## **Introduction**

Discovery in this case closed on September 25, 2008 (D.E. 13). After the close of discovery, both parties filed discovery motions seeking rulings on several issues. First, the parties contest the admissibility and relevance of certain electronic mail (e-mail) messages obtained from Defendant Kathlyn Patton's computer in early 2007. Next, Plaintiffs seek an order to compel Defendants to turn over additional information through discovery. Finally, Defendant Patton seeks a protective order against Plaintiff Millican. This order will address each of these subjects in turn.

## I. Defendants' Motion for Protective Order and Plaintiffs' Motions to Determine Admissibility

Both parties seek a ruling from the Court on the admissibility of e-mail messages that were obtained from Defendant Kathlyn Patton's computer in 2007. The Defendants seek a protective order, claiming that many of the contested e-mails are attorney-client privileged or not relevant to Plaintiffs' claims (D.E. 38). Along with their response (D.E. 42), Plaintiffs move for a determination by this Court of the admissibility of the documents[1] (D.E. 41).

### A. Factual and Procedural Background

The sequence of events of this dispute is somewhat complicated. In early 2007, Defendant Kathlyn Patton asked Anthony Sanders, a technology supervisor at defendant Coastal Bend College (CBC), to back up her files, including her e-mail. Sanders apparently made two DVD copies of Patton's e-mails, giving one to Patton and retaining the other. On April 30, 2007, Sanders, who is not a party in this case, filed two DVDs with the district court of Jim Wells County, Texas, seeking the appointment of a receiver.[2] CBC sought the return of the DVDs. While the application for a receiver was pending, the Jim Wells County district clerk made copies of the DVDs for members of the public, having determined that the material on the DVDs was public information and court records under Tex. R. Civ. P. 76(a). Plaintiffs in this case apparently received

---

[1] This motion was initially filed as Docket Entry 39, but was incomplete. The full document was entered as Docket Entry 41.

[2] An application for appointment of a receiver is filed in Texas state court to protect contested property. Tex. Civ. Prac. & Rem. Code § 64.001. The party seeking the appointment must have a probable interest in or right to the property for which a receiver is sought. *Id.* Additionally, the property must be "in danger of being lost, removed, or materially injured." Tex. Civ. Prac. & Rem. Code § 64.001(b). A receiver takes possession of the property at issue, subject to control of the court. Tex. Civ. Prac. & Rem. Code § 64.031(1) and (5).

copies of some of the documents via members of the public, but did not request copies of the DVDs themselves.  On June 20, 2007, CBC filed a motion to seal the records in Jim Wells County.  In the summer of 2007, Judge Wellborn in the 36th District Court in Bee County ordered all DVDs and paper copies of the contested documents returned and put on file with the Jim Wells County district clerk[3] (D.E. 38, Ex. A).  On August 16, 2007, Judge Terrell of the 79th District Court in Jim Wells County ordered all contents of the DVDs and any hard copy sealed, and ordered plaintiffs' counsel to obtain the documents through discovery in anticipated litigation (D.E. 38, Ex. B; D.E. 41, Ex. 5).   The order did not address the disposition of copies of the DVDs (D.E. 41, Ex. 6).

      This case was filed in the United States District Court for the Southern District of Texas on December 3, 2007.  The first motion relating to the documents at issue, Defendants' Motion for Protective Order, was filed on October 7, 2008 (D.E. 38).  In this motion, Defendants allege that Plaintiffs and their attorney have access to e-mails and other electronic files that were taken from Coastal Bend College ("CBC") by a former employee, without authorization.  *Id.*  Defendants allege that Plaintiffs have acknowledged that they continue to possess documents from the contested DVDs that were not provided by CBC in discovery.  Defendants seek a protective order, arguing that the documents in question are protected by the attorney-client privilege or irrelevant to Plaintiffs' claims.  *Id.*  In their response, Plaintiffs make three main arguments for the documents' admission and use—first, they argue that the documents were public

---

[3] Defendant CBC initially filed suit in Bee County against several people, including attorneys, who they believed had access to the DVDs containing privileged material.  That case was apparently dismissed soon after its filing.

information and properly available to the public (D.E. 41).  Second, they argue that Defendants waived any privilege argument by failing to assert it in a timely manner.  *Id.*  Finally, Plaintiffs argue that the documents fall under the crime/fraud exception to the attorney-client privilege and are therefore admissible.  *Id.*

On October 14, 2008, the District Court held a hearing on Defendants' motion for protective order relating to the contested documents.  After the hearing, the Court ordered all exhibits filed from the contested DVD sealed (D.E. 49).  The Court additionally ordered the parties to confer about the admissibility of the sealed exhibits.  If agreement could not be reached, Defendants were to file objections to specific exhibits which they wished to remain sealed.  Defendants filed objections on October 31, 2008 (D.E. 61).  Plaintiffs responded on November 14, 2008 (D.E. 67).  At the hearing held before the undersigned on June 25, 2009, the parties indicated that they had reached agreement on most of the documents, leaving three groups of e-mails still contested, which were referred to in the hearing as Groups A, B, and C (Identified as Court Exhibits A, B, and C):

> **Group A:** Documents bates-stamped JS 11–13; AR 92–93, 69, 81, 100, 95–96; MH 716; PH 52; JS 26; AR 4–6, 118, 7, 12–13, 27, 91, 74–75, 79–80, 97–99, 120; JS 27; MH 4–6, 707–09, 14; PH 20–21, 58–59; MH 7, 710, 8, 711, 9–12, 712–15, 13, 717; RICH 1832–34.
>
> **Group B:** Documents bates-stamped RICH 1805–20; AR 23–25; RICH 1807 (included twice).
>
> **Group C:** Documents bates-stamped AR 531–33, 539, 587–92, 594–96, 599–606, 614–618, 625–30, 635–36, 647–48, 657–59, 662–71, 674–76, 688, 696–699.

The parties have agreed that any objections to documents not contained in one of these three groups are waived. Therefore, it is ORDERED that the documents filed under seal as Docket Entries 41, 43–47, 51–57, and 64 be unsealed, except for those documents which are a part of Group A, B, or C.

### B. Discussion

#### 1. Public Information Act

Plaintiffs request that the documents contained in Groups A–C be unsealed. The first argument Plaintiff makes is that the e-mails should be admitted under the Texas Public Information Act, Tex. Gov't. Code § 552.001 *et seq*. That statute governs records and information collected and maintained by governmental bodies, including public colleges and universities. Tex. Gov't. Code § 552.003. The Public Information Act requires that the public have access to broad categories of information, and it is to be liberally construed in favor of the public's right of access. Tex. Gov't. Code § 552.001. However, the Act also contains several exceptions to this general right, including privileged communications between the government body and its attorney. Tex. Gov't. Code § 552.107. Most of the e-mails Defendants seek to keep out are communications between the college's administration and its attorney relating to the actions at issue in this case. As Plaintiffs cite no law for their contention that the attorney-client privilege exception does not apply here, the undersigned finds this argument unpersuasive.

#### 2. Waiver

Next, Plaintiffs argue that Defendants waived any objections to the disclosure of the e-mails by not taking timely action to stop distribution of the DVDs once Defendants

became aware of their existence and dissemination to interested members of the public (D.E. 41). The application for appointment of a receiver was filed by Sanders, the person who copied the e-mails to DVD, in April 2007. CBC did not file a motion to seal the records until June 20, 2007. Plaintiffs argue that this delay in filing represents a waiver of the attorney-client privilege. *Id.*; D.E. 42. Defendants respond that they never authorized the release of the documents, and accordingly never waived the privilege (D.E. 63). Additionally, Defendants argue that they did take timely action to stop distribution when they became aware of it. *Id.*

At the hearing, Defendants set forth a timeline of their actions, beginning on May 3, 2007, four days after the application for a receiver was filed in state court, and culminating in the sealing order in Jim Wells County and the Bee County suit against recipients of the DVD, both filed in late June. The Jim Wells County order sealed the DVD filed in that county, but did not address the disposition of the copies already made (D.E. 38, Ex. B; D.E. 41, Ex. 5). The Bee County suit led to the return of the DVDs by each person who was listed in the Jim Wells County Clerk's office as having been given copies of the DVD. Each person who received a copy signed documentation representing that he/she was turning in everything he/she had from the DVD. Defendants did not have knowledge of any copies that had not been turned in. It is notable that no defendant was responsible for the disclosure; rather it was a former CBC employee and personnel in the Jim Wells County Clerk's office who were responsible for the disclosure. To the extent there was inadvertent disclosure in this case, no defendant was involved. The Court finds that Defendants made efforts to protect the e-mails from disclosure once they became

aware of their distribution to the public. Accordingly, there is no waiver of privilege by Defendants, and principles of fairness dictate that plaintiffs not be permitted to use privileged matter. *See Securities & Exchange Comm. V. Brady,* 238 F.R.D. 429, 445 (N.D. Tex. 2006) (court has broad authority to exclude documents unfairly obtained outside of the discovery process); *In re Shell Oil Refinery*, 143 F.R.D. 105, 108 (E.D. La. 1992) (going outside of discovery to get proprietary documents was inappropriate and contrary to fair play).

### 3. Privilege

Defendants claim that the documents in Groups A and C are protected from disclosure because they are attorney-client privileged communications between the attorney for the College and members of the College's administration[4] (D.E. 38). Under the attorney-client privilege, a party "has a privilege to refuse to disclose, and prevent its attorneys from disclosing confidential communications between its representatives and its attorneys when the communications were made to obtain legal services." *Nguyen v. Excel Corp.,* 197 F.3d 200, 206 (5th Cir. 1999) (citing 3 JACK B. WEINSTEIN ET AL., WEINSTEIN'S FEDERAL EVIDENCE §§ 503.10, 503.11, AT 503-14-15 (2D ED. 1999); *Upjohn Co. v. United States,* 449 U.S. 838, 101 S.Ct. 677 (1981)). All documents in Groups A and C, with the exception of those documents noted below, involve discussions between administration officials and their counsel regarding the handling of personnel matters, and are privileged. Such documents shall remain sealed.

---

[4] The Defendants object to the admission of the e-mails in Group B on grounds of relevance and not privilege. *See infra*.

*Exceptions*

a.  Plaintiffs argue that document A6 (AR 69), though privileged, is necessary to impeach a non-party witness at trial.  Plaintiffs cited no law in support of their argument, and for now the document shall remain sealed subject to Plaintiffs right to re-open this matter with appropriate authority.

b.  Documents A11 and A38 (bates numbers MH 716 and MH 14) are both copies of a draft letter prepared by Defendant Brockman and addressed to Plaintiff Huff.  Defendants claim the draft was sent to the college's attorney for his comment and it is therefore privileged; however, the e-mail to which it was an attached is not on file with this Court.  These two documents are unsealed and may be used, subject to Defendants' right to submit additional authority to prove that the draft was submitted to counsel for comment and approval.

c.  Document A13 (JS26) is ordered partially sealed.  The e-mail from Defendant Martinez is not privileged and is admissible; however the response from the college's attorney is privileged and shall remain sealed.

d.  Document C 54-55 (AR 696-97) is also ordered partially sealed.  The e-mails from Kathlyn Patton and John Brockman sent on December 12, 2004, are not privileged and shall be unsealed.  The e-mails from Duwayne Dumas and John Brockman that were sent on December 11, 2004, however, discuss advice the administration received from the CBC's attorney, are privileged, and shall remain sealed.

### 4. Crime Fraud Exception

Plaintiffs claim that the e-mails fall under the crime/fraud exception to the privilege and that they should therefore be admissible (D.E. 41). The crime/fraud exception to the privilege allows for the production of attorney-client privileged documents when the advice in the documents is intended to assist in carrying out or continuing a crime or fraud. In order to invoke the exception, the party seeking to overcome the privilege must make a prima facie case involving two steps, described by the Fifth Circuit as follows: "First, there must be a prima facie showing of a violation sufficiently serious to defeat the work product privilege. Second, the court must find some valid relationship between the work product . . . and the prima facie violation." *In re International Systems and Controls Corporation Securities Litigation*, 693 F.2d 1235, 1242 (5th Cir. 1982). Pleadings and allegations alone are not sufficient evidence to establish a prima facie case. *Id.*; *In re Grand Jury Subpoena*, 419 F.3d 329 (5th Cir. 2005).

The evidence of crime or fraud here is at best attenuated and at worst nonexistent. At hearing, Plaintiffs alleged the existence of a wide-ranging conspiracy against them, including affairs between co-defendants, plans to blackmail a Defendant board member and to pressure the Board to remove the Plaintiffs from their duties and replace them with younger Hispanic employees. None of this is present in the e-mails at issue. Plaintiffs submit nothing beyond pleadings and allegations in support of their contention that a crime or fraud has occurred, and that a link exists between that alleged crime and the advice given by Defendants' attorney. The documents Defendants object to involve legal

9 / 14

advice and legal discussions between administration officials and their attorney. Advising administration and board members about how to avoid lawsuits is neither criminal nor fraudulent, and Plaintiffs have not made any more specific argument as to why this exception to the attorney-client privilege should apply.

### 5. Group B - Relevance

Defendants also challenge the admission of several e-mails between Defendants Kathlyn Patton and Santos Martinez, marked at the June 25th hearing as Group B. Here, Defendants do not have an attorney-client privilege argument, instead objecting to admission on the grounds of relevance. Plaintiffs claim that the e-mails at issue are evidence of an illicit affair between Defendants Patton and Martinez, and further claim that this affair provided the impetus for wrongful acts against Plaintiffs. The documents in question are not privileged, and have been available to the public for some time already. While it is not clear to what extent, if any, these e-mails are relevant to the Plaintiffs' employment discrimination claims, a determination of relevance is premature at this point in the proceedings. The e-mails may not be relevant, but neither are they privileged. The documents contained in Group B are ordered unsealed, and Defendants' relevance objections are DENIED without prejudice.

## II. Plaintiffs' Motion to Compel

Plaintiffs additionally seek to compel Defendants to provide additional information through discovery (D.E. 41). At hearing, Plaintiffs listed four categories of discovery they sought: 1) personal cellular phone records from Defendants Brockman, Cantu, Adamez, Martinez, and Patton, 2) personal e-mail records from those Defendants,

3) expense reports, particularly relating to those Defendants' travel, and 4) interoffice communication relating to Plaintiffs which is not privileged (D.E. 41).

      **A.**    **Cell phone records.**  The motion to compel with regard to the cellular phone records is denied, as Plaintiffs have not shown that the records sought are relevant to the case at hand. The telephone records would only show the date, time, call length, and person called, not the substance of any discussion between the Defendants, and the mere fact that the Defendants communicated by personal cellular phone does not prove that the matters discussed were either personal or illegal.

      **B.**    **Personal E-mails.**  Next, Plaintiffs seek disclosure of all e-mails sent and received from the administration Defendants to each other utilizing their personal e-mail accounts, and any personal e-mail in which the Defendants either discuss the Plaintiffs or communicate matters "of a personal nature" (D.E. 41, Ex. 8). Defendants object to this request. They first claim that no e-mails discussing the Plaintiffs were sent from the Defendants' personal accounts, particularly since several of the Defendants do not have personal e-mail accounts, and that the e-mails would have already been turned over had they existed. Next, Defendants object that any e-mails of a personal nature between the administration Defendants are not relevant to the case at hand. E-mails sent among the Defendants discussing the Plaintiffs, if such e-mail exists, would be relevant to Plaintiffs' case. Plaintiff's motion to compel disclosure of any e-mails from Defendants' personal accounts which discuss the Plaintiffs is granted. If the Defendants do not have personal e-mail accounts, they are ordered to submit affidavits to that effect. With respect to any defendant's e-mails of "a personal nature" sent to and among each other, Defendants are

ordered to submit those e-mails to the Court under seal, for and *ex parte* determination of relevance. Compliance with this section shall be completed on or before **July 9, 2009**¸ fourteen days following the June 25th hearing.

      C.     **Expense reports.** At the June 25th hearing, Plaintiff sought discovery of expense reports from the college, claiming that they would provide evidence of trips that the administration Defendants took together, and therefore evidence of joint action among those Defendants. This request was not included in Plaintiffs' motion to compel, and the Requests for Production filed with that motion do not refer to expense reports. *See* D.E. 41, Ex. 8. Plaintiffs withdrew this request, so no ruling is made in it.

      D.     **Interoffice communications.** Lastly, Plaintiffs seek disclosure of interoffice communications regarding Plaintiffs from as far back as 2000. Defendants have already turned over documents from January 1, 2003 and later, and argue that documentation earlier than that would be both irrelevant and extremely difficult to produce, due to the College's document-retention procedures. Plaintiffs respond that the first actions by the college against older women employees began in 2000, and that an alleged affair between two of the administration Defendants likewise began in 2000. However, Plaintiffs admitted that, of the administration Defendants, only Defendant Brockman was in a high-level administrative position in 2000. Plaintiffs do not allege that any wrongful actions were taken against them in this earlier period for which they now seek discovery (D.E. 24). Accordingly, without more to show that events from 2000 to 2002 are relevant to the facts of this case, the motion to compel records earlier than January 1, 2003, is denied.

**III.  Defendant Patton's Motion for Protective Order**

Finally, Defendant Kathlyn Patton seeks a protective order and sanctions against Plaintiffs (D.E. 68).  Plaintiff Millican initially alleged employment discrimination based on her termination from the Coastal Bend College bookstore, contending that the termination was both retaliatory and due to her age, gender, and ethnicity (D.E. 24).  Since the filing of the complaint and the close of discovery, Plaintiff Millican apparently applied for an open position at the college bookstore and was not hired.  (D.E. 68, Ex. 3).  She now seeks personnel information about the candidates for the position, which was filled in November 2008.  *Id.*  Defendant Patton moves for a protective order against these discovery requests, arguing that discovery closed before any alleged failure to hire occurred, that Defendant Patton does not have the information sought and is not liable in her individual capacity, and that Millican has not sought leave of the Court to amend her pleadings to add any new claims (D.E. 68).  Plaintiffs have never responded to this motion, and have never sought leave of the Court to amend their pleadings to add a failure to hire claim, either against Defendant Patton individually or against Coastal Bend College.

Because there is before the court no motion to amend to add a new claim, Defendants' motion for a protective order (D.E. 68) is granted; however Defendants' counsel agreed in open court to voluntarily provide the information sought by plaintiffs' counsel within fourteen days of the date of the hearing.  Plaintiffs' counsel shall have five days from the date of receipt of the documents to determine whether he intends to seek leave to add a new claim on behalf of plaintiff Millican.  Failure to timely file a motion

for leave to amend will result in the denial of a request for leave to amend; however this order is not intended to restrict plaintiff Millican's right to file a separate lawsuit related to the events surrounding defendants' failure to hire her in 2008.

**Conclusion**

All relief requested in the pending discovery-related motions (D.E. 38, 41, 51, 52, 66, 68) not granted by this order IS DENIED.

ORDERED this 2nd day of July, 2009.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE