**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **ELIZABETH ANN RICHMOND,** | § | |
| **ET AL.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **C.A. NO. C-07-458** |
| | § | |
| **COASTAL BEND COLLEGE** | § | |
| **DISTRICT, ET AL.,** | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs allege that the Coastal Bend College District ("CBC" or "the College"),

several of its administrators and the individual members of its board of directors

unlawfully discriminated against them in their employment as teachers and violated civil

rights extended to them by the United States Constitution and federal statutes.  Pending

before the Court are defendants' motions to dismiss and motions for summary judgment

(D.E. 33, 34, 35) to which plaintiffs have responded.

This matter was referred to the United States Magistrate Judge pursuant to 28

U.S.C. § 636(b)(1)(A) and (B).  In her memorandum to the Court, the Magistrate Judge

recommended that plaintiff Shiner be allowed to proceed on her § 1983 free speech claim

against defendants Brockman, Cantu, Martinez and Patton, her Title VII retaliation claim

against CBC and her false imprisonment claims against CBC and also that plaintiff

Millican be allowed to proceed on her Title VII claims against CBC and her § 1981 claim

against Patton.  The Magistrate Judge further recommended that all remaining claims be

dismissed with prejudice (D.E. 96).  Apparently pleasing no one, her recommendations received objections, including especially acrimonious ones by plaintiffs' counsel.

The Court has reviewed the Memorandum and Recommendations, the objections filed by both parties, and the subsequent briefing submitted by both parties and made a *de novo* review of the material on file.  In addition, the Court held a hearing on the pending motions.  For the following reasons, the Court adopts with modifications the Magistrate Judge's recommendations and grants in part and denies in part Defendants' motions to dismiss and for summary judgment.

## BACKGROUND

### I. Parties

Plaintiffs Elizabeth Ann Richmond,[1] Marjorie Huff, Patricia Herrmann, Mildred C. Powell, Janet Shiner, Judith Petersen and Dixie Millican are Anglo women over the age of 40 who worked for CBC as instructors, administrators or both.  All claim that they were victims of a plan on the part of the CBC administration to discriminate against older, Anglo, female employees in an effort "to turn the college into" a predominantly Hispanic institution.

Defendants John Brockman, Valeriano Cantu, Santos Ramirez, Kathlyn Patton and Alma Adamez ("the administration defendants"), were administrators at CBC during the relevant time period.  Brockman was president of CBC from 1999 through his retirement

---

[1]Plaintiff Richmond died on August 13, 2010 and her estate is represented by Charles Michael Richmond (D.E. 116, 120).

2

in August, 2007.  Cantu was Vice-President of Instructional Services ("VPIS") from August 2005 through December 2007.  Martinez became Vice-President of Student Services in 2003 and was responsible for personnel services and overseeing the accreditation requirements of the institution.  Patton has been Director of Personnel Services at CBC since 1995.  Her responsibilities include keeping employment records, and receiving general employee concerns, complaints of discrimination and contract non-renewal grievances.  Adamez was either the Director of Educational Services or Director of Academic Programs at the College during the relevant time period.  Defendants Paul Jaure, Grady C. Hogue, Jr., Louise W. Hall, R.W. Dirks, Emilia H. Dominguez, Carroll W. Lohse, and Fred Moron ("the board defendants") were members of the CBC Board of Trustees during the relevant time period.

## II.  Allegations and Causes of Action

Plaintiffs claim the administration defendants developed a plan for controlling the College for their personal agenda, which was to make it a predominantly Hispanic institution.  In furtherance of their plan, they targeted older, female, Anglo employees for termination, harassment and other discriminatory action.  Each of the plaintiffs, with a few exceptions noted below, claims causes of action for race and gender discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e; age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*.("ADEA"); and violations of 42 U.S.C. §§ 1981, 1983 and 1985.  In addition,

plaintiff Richmond asserts a state common law cause of action for invasion of privacy and

Shiner asserts a common law cause of action for false imprisonment.

## APPLICABLE LAW

### I.  Summary Judgment Standard

Summary judgment is proper when the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a).  A party asserting that a fact either cannot be or is genuinely

disputed must support the assertion by citing to particular parts of material in the record,

or by showing that the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to support

the fact.  FED. R. CIV. P. 56(c).

An issue is material if its resolution could affect the outcome of the action.  Lewis

v. Univ. of Texas Med. Branch at Galveston, 665 F.3d 625, 630 (5th Cir. 2011) (citing

Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001)).  The Court must

examine "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91

L.Ed.2d 202 (1986).  In making this determination, the Court must consider the record as

a whole by reviewing all pleadings, depositions, affidavits and admissions on file,

drawing all justifiable inferences in favor of the party opposing the motions.  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The Court will not weigh the evidence or evaluate the credibility of witnesses. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). In reviewing the evidence, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached." Daniels, 246 F.3d at 502 (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Conclusional allegations and unsubstantiated allegations may not be relied on as evidence by the nonmoving party. Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011). Summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party. Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 399 (5th Cir. 2008)(citing Anderson, 477 U.S. at 248).

The party moving for summary judgment need not negate the elements of the nonmovant's case. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, the movant need only demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. See Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.

5

After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. Caboni, 278 F.3d at 451.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense.  See Milchalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005).  When a government official has pleaded the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law.  Id. Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct.  Bazen v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001).

## II.  Title VII, ADEA and 42 U.S.C. § 1981 Causes of Action

### A.  Plaintiff Millican

The Magistrate Judge recommended that Millican be allowed to proceed on her Title VII action against CBC and also on her § 1981 action against defendant Patton.  At the hearing held in this matter, defendants conceded that fact issues preclude summary judgment on plaintiff Millican's Title VII claim based on race, but not on her § 1981 claim.  Having reviewed the relevant pleadings and evidence, the Court adopts the findings of the Magistrate Judge and denies summary judgment on plaintiff Millican's Title VII claims and her § 1981 claim against defendant Patton.  Summary judgment is entered for defendants on all of plaintiff Millican's remaining claims.

6

In addition, the Court determines that for purpose of convenience, to avoid prejudice and in order to proceed expeditiously and economically, plaintiff Millican's trial will be held separately from the other plaintiffs' trial. FED. R. CIV. P. 42(b). The Court is aware that plaintiffs object to the severance of Millican's trial from the other plaintiffs' trial. The Court also is familiar with the law regarding joinder of claims and commonality of issues. However, as discussed more fully below, individual plaintiffs may not bring a "pattern or practice" claim in the Fifth Circuit and Millican will have to prove her cause of action using the appropriate Title VII framework. The only party common to Millican's and the other plaintiffs' law suits is defendant Patton and Millican's factual allegations are distinct from those of the other plaintiffs. Plaintiffs' objection to the severance of Millican's trial is overruled.

### B. Remaining Plaintiffs

Plaintiffs in this case allege age, sex and race discrimination, as well as retaliation and hostile environment claims. The claims are factually complex and form a web so intertwined that the issues must be resolved by a jury. The Court has determined that, with the exceptions noted below, fact issues preclude entry of summary judgment on plaintiffs' claims of discrimination brought pursuant to Title VII, the ADEA and 42 U.S.C. § 1981. All plaintiffs except Huff may proceed to trial on their statutory discrimination claims.

Plaintiff Huff's discrimination claims were filed too late and are barred by the statute of limitations. In states like Texas where there is a state agency with the authority

to grant or seek relief for discriminatory employment practices, in order to maintain a Title VII claim, a plaintiff must file a charge of discrimination with the EEOC within "three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998). A claim is time-barred if it is not filed within these limits. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002).

The CBC board approved Huff's removal from her positions on September 6, 2005. (Minutes, Ex. S-15 to Rev. Supp. Resp. #3; D.E. 135-2 at 2-7). Plaintiff had 300 days from that date, or until July 3, 2006, to file her EEOC complaint. She did not file it until January 31, 2007 (Mot. for Sum. Jmt., Ex. 9; D.E. 35-2 at 40). Accordingly, the charge was not timely filed and Huff is barred from bringing those claims as discrete acts of discrimination. See Morgan, 536 U.S. at 114, 122 S.Ct. at 2073. (Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire must take place within the timely filing period to be actionable). Nor can Huff seek relief for the discrete acts under 42 U.S.C. § 1981 because they were brought outside the applicable two-year limitations period. Pegram v. Honeywell, 361 F.3d 272, 280 (5th Cir. 2004). Summary judgment is entered for defendants on Huff's Title VII, ADEA and 42 U.S.C. § 1981 sex, race, age and retaliation claims.

Summary judgment is denied on Huff's Title VII hostile environment claim because some of the acts on which she bases her claim occurred within the 300-day window. "Because a hostile work environment charge generally consists of multiple acts

8

over a period of time, the requisite EEOC charge must be filed within 300 days of any action that contributed to the hostile work environment." E.E.O.C. v. WC&M Enterprises, Inc., 496 F.3d 393, 398 (5th Cir. 2007).

## III.  42 U.S.C. § 1983 Causes of Action

To state a claim under §1983 a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000)(citing Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994)).  "A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation."  James v. Texas Collin County, 535 F.3d 365, 373 (5th Cir. 2008).

Claims under § 1983 may be brought against persons in their individual or official capacities, or against a governmental entity.  Goodman v. Harris County, 571 F.3d 388, 395 (5th Cir. 2009)(citing Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).  "Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  Id. (citing Monell v. Dept. of Soc. Serv's of City of New York, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).  In a personal-capacity suit, the individual defendant may assert personal immunity defenses such as qualified

immunity.  Plaintiffs in this case named both the administrative defendants and the board defendants in their personal capacities.

Local governing bodies, including CBC, can be sued directly under § 1983 where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.  Monell v. Dept. Of Soc. Serv. Of City of N.Y., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).  In addition, local governments may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels.  Id.

Official policy has been defined as "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority."  Brown v. Bryan County, OK, 219 F.3d 450, 457 (5th Cir. 2000)(citing Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984)).  Alternatively, official policy is "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  Id.  Also, "a final decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations' may, in some circumstances, give rise to municipal liability under § 1983."  Brown, 219 F.3d at 457 (citations omitted).

"The culpability element, which may overlap with proof of a policy, requires evidence that the municipal action was taken with deliberate indifference as to its known or obvious consequences.  A showing of simple or even heightened negligence will not suffice."  Id.  In a Texas community college, the board of trustees is the final decision maker.  Dallas County Community College District v. Bolton, 185 S.W.3d 868, 872 (Tex. 2005).

## A.  Qualified Immunity

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002)(en banc).  To discharge this burden, the plaintiff must satisfy a two-prong test.  Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 251-52 (5th Cir. 2005). First he must claim that the defendants committed a constitutional violation under current law.  Id.  Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions about which he complains.  Id.  While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then

determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  <u>Pearson</u>, 129 S. Ct. at 818 (receding from <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

For a right to be clearly established, "'the contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  <u>Bishop v. Arcuri</u>, 674 F.3d 456, 466 (5th Cir. 2012)(quoting <u>Flores v. City of Palacios</u>, 381 F.3d 391, 399-400 (5th Cir. 2004) and <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  "'If a right is clearly established enough to impart fair warning to the [defendants], then their conduct in violating that right cannot be objectively reasonable.'"  <u>Id.</u> (quoting <u>Willaims v. Kaufman Cnty.</u>, 352 F.3d 994, 1002 n. 12 (5th Cir. 2003).

## B.  Substantive Due Process

To prevail on a substantive due process claim in the public employment context, a plaintiff must show two things: (1) that she has a property interest or right in her employment and (2) that the public employer's termination of the interest was arbitrary or capricious.  <u>Lewis v. University of Texas Medical Branch</u>, 665 F.3d 625, 630 (5th Cir. 2011).  A property interest in employment may be created by ordinance or implied contract, but in any event the existence of such an interest is determined by reference to state law.  <u>Moulton v. City of Beaumont</u>, 991 F.2d 227, 230 (5th Cir. 1993).  Texas is an

employment-at-will state where, absent a specific contract to the contrary, employment contracts are terminable at will by either party.  Id.

The due process clause does not protect a public employee's specific job duties or responsibilities absent a statute, rule or express agreement reflecting an understanding that she had a unique property interest in those duties or responsibilities.  Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010).  No protected property interest is implicated by reassigning or transferring an employee absent a specific statutory provision or contract term to the contrary.  Kelleher v. Flawn, 761 F.2d 1079, 1087 (5th Cir. 1985).  Absent a property interest, there is nothing subject to due process protections and the court's inquiry ends.  Gentilello, 627 F.3d at 545 (internal citation omitted).

All of the plaintiffs assert that they were deprived of a constitutionally protected property interest in their employment (See D.E. 117 at 40-41, 62, 81, 97, 116, 133). Defendants argue that the plaintiffs have not produced evidence showing that they had a property right in either their jobs, or in particular positions or functions related to their jobs and defendants are correct.[2]  While some of the plaintiffs had employment contracts, none has shown where the terms of her contract were violated by a termination or reassignment of job duties.  Nor has any plaintiff referenced any state law or ordinance

---

[2]In their objections to the M&R, plaintiffs argued that the Magistrate Judge refused to infer due process rights of the plaintiffs and stated that defendants did not contest the fact that the plaintiffs had property interests in their jobs (D.E. 97 at 6-7).  The assertion is incorrect.  Defendants argued that the plaintiffs did not have a property interest in their jobs in the CBC Motion for Summary Judgment and Motion to Dismiss (D.E. 34 at 37-39).

giving them a property right in their continued employment or in specific job duties. Because they have not come forward with evidence to show that they had a property interest at stake, there is no genuine issue of material fact to preclude summary judgment. Accordingly, judgment is entered for defendants on all the plaintiffs' substantive due process causes of action.

## C.  Procedural Due Process

To state a Fourteenth Amendment due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then show that a governmental action resulted in a deprivation of the interest.  Gentilello, 627 F.3d at 544. The essential elements of a procedural due process under the Constitution are notice and an opportunity to respond.  Finch v. Fort Bend Independent School Dist., 333 F.3d 555, 562 (5th Cir. 2003)(citing Cleveland Bd. of Educ. v Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)).  Depending on the circumstances and the interests at stake, a fairly extensive evidentiary hearing may be constitutionally required before a legitimate claim of entitlement may be terminated.  Brock v. Roadway Exp., Inc., 481 U.S. 252, 261, 107 S.Ct. 1740, 1747, 95 L.Ed.2d 239 (1987)(citations omitted).  In other circumstances, however, the Supreme Court has upheld procedures affording less than a full evidentiary hearing if some kind of hearing ensuring an effective initial check against mistaken decisions is provided before the deprivation occurs and a prompt opportunity for complete administrative and judicial review is available.  Id., 481 U.S. at 261-62, 107 S.Ct. at 1747.

As discussed above, plaintiffs have not provided evidence to support their allegations that they had protected property interests in their jobs or in specific duties assigned to them as part of their jobs.  Without doing so, they cannot show that there is a genuine issue of material fact that requires a jury determination.  <u>Gentilello</u>, 627 F.3d at 545.

Moreover, even if plaintiffs had shown that they had a property interest in their positions, all of them who sought a hearing received a review of their claims.  In Richmond's case, the CBC board appointed attorney Mary Ann Hisel to conduct an investigation.  Hisel reported her findings to the board and it voted to adopt them.  In Powell and Petersen's case, the board appointed attorney Gene Ward to conduct and investigation.  He reported his findings and conclusions to the board, which adopted them.  Powell and Petersen claim that their hearings were not held promptly, but the record shows that the delays were caused by an inability to agree on a person to conduct the investigation and also, in part, on inclement weather.  Herrmann asked for a grievance hearing at the same time she tendered her resignation.  She was asked to clarify whether she was resigning and told that if she did resign, she was not entitled to a hearing.  She did not reply to the inquiry and therefore defendants did not proceed on her grievance.

To the extent plaintiffs are complaining that the CBC board violated its own policies when it appointed individuals to conduct the investigations rather than doing so themselves, the Court's concern is that the plaintiffs received adequate notice and an opportunity to be heard by an appropriately competent and impartial tribunal, which

15

appears to have occurred here.  See Ramirez v. Ahn, 843 F.2d 864, 867 (5th Cir.

1988)(when hearing officer conducted independent, impartial and thorough investigation

and based findings and recommendations on witness testimony, records and statements of

party, procedure satisfied due process requirements).  In addition, even if the hearings did

not comport with due process, plaintiffs have made no showing that the individual

defendants made decisions regarding the investigations and hearings that were objectively

unreasonable in light of the law that was clearly established at the time.  For all of these

reasons, summary judgment is entered for defendants on plaintiffs' procedural due

process claims.

**D.  Freedom of Speech**

A public employee may not suffer an adverse employment action for exercising his

or her right to free speech under the First Amendment, even though only certain speech is

protected.  Fowler v. Smith, 68 F.3d 124, 126 (5th Cir. 1995); Harrington v. Harris, 118

F.3d 359, 365 (5th Cir. 1997).  Adverse employment actions are discharges, demotions,

refusals to hire, refusals to promote and reprimands.  Id. (citing Pierce v. Texas Dep't. of

Crim. Justice Inst. Div., 37 F.3d 1146, 1149 (5th Cir. 1994)).  Transfers can constitute

adverse employment actions if they are sufficiently punitive, or if the new job is markedly

less prestigious and less interesting than the old one.  Breaux v. City of Garland, 205 F.3d

150, 157 (5th Cir. 2000).  Non-renewal of a teaching contract can also constitute an

adverse employment action.  Perry v. Sinderman, 408 U.S. 593, 596-597, 92 S.Ct. 2694,

2697, 33 L.Ed.2d 570 (1972).  However, actions such as decisions concerning teaching

assignments, pay increases, departmental matters and administrative procedures do not rise to the level of a constitutional deprivation.  <u>Harrington</u>, 118 F.3d at 365 (citing <u>Dorsett v. Bd. of Trustees for State Colleges and Universities</u>, 940 F.2d 121, 123 (5th Cir. 1991)).

To make out a § 1983 claim for retaliation based on free speech, a plaintiff employee must first show that she suffered an adverse employment action.  <u>Alexander v. Eeds</u>, 392 F.3d 138, 142 (5th Cir. 2004).  Then she must show that she spoke as a citizen on a matter of public concern.  <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006).  Next, she has to show that her interest in the speech outweighed the government's interest in the efficient provision of public services.  <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).  Finally, she must show that the speech precipitated the adverse employment action.  <u>Eeds</u>, 392 F.3d at 142.  If plaintiffs make a prima facie showing, the burden shifts to defendants to show that they would have made the same decision absent the protected conduct.  <u>Id.</u> (citing <u>Beattie v. Madison County Sch. Dist.</u>, 245 F.3d 595, 601 (5th Cir. 2001)).

Under <u>Garcetti</u>, for a public employee's speech to qualify for First Amendment protection, he must be speaking as a citizen on a matter of public concern.  <u>Nixon v. City of Houston</u>, 511 F.3d 494, 497 (5th Cir. 2007)(citing <u>Garcetti</u>, 547 U.S. at 419, 126 S.Ct. at 1958).  An employee is not speaking as a citizen, but rather in his role as an employee, when he makes statements pursuant to his official duties.  <u>Id.</u> (citing <u>Garcetti</u>, 547 U.S. at 421, 126 S.Ct. at 1960).  When public employees make statements pursuant to their

17

official duties, the First Amendment of the Constitution does not insulate them from employer discipline.  Garcetti, 547 U.S. at 421, 126 S.Ct. at 1960.

The court's first task is to decide whether the plaintiff spoke as a citizen or as part of her public job.  Davis v. McKinney, 518 F.3d 304, 312 (5th Cir. 2008).  If she spoke as a citizen, the court must next determine whether the speech was on a matter of public concern.  If the speech raised matters of public concern, the court applies the Pickering balancing test to determine whether the employee's interest in expressing the concern outweighed the employer's interest in promoting the efficiency of the public services it performs through its employees.  Id. at 318.

If a plaintiff makes out a prima facie case that her free speech rights have been violated, the burden shifts to the defendants to show by a preponderance of the evidence that they would have made the same decision or undertaken the same action in relation to the plaintiff even in the absence of protected conduct.  Oscar Renda Contracting, Inc. v. City of Lubbock, 577 F.3d 264, 271 (5th Cir. 2009)(citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).  When both parties have presented evidence on the issue of whether an employee's protected conduct was a substantial or motivating factor in an employer's decision to take action against an employee, a fact question exists which ordinarily renders summary disposition inappropriate.  Click v. Copeland, 970 F.2d 106, 113 (5th Cir. 1992).

A plaintiff claiming violation of her free speech rights must be specific as to when her statement or statements were made, to whom they were made, whether they were written or oral and the content of the statements.  Foley v. University of Houston System, 355 F.3d 333, 342 (5th Cir. 2003).  If she cannot do so, she cannot overcome the defense of qualified immunity.  Id.  See also Dowdy v. College of the Mainland, 837 F.Supp. 628, 633-634 (S.D. Tex. 2011)(citing Snyder v. Phelps, ___ U.S. ___, 131 S.Ct. 1207, 1216 (2011)(When court is determining whether speech is of public concern it must examine the content, form and context of the speech as revealed in the record).

With the exception of Shiner, the plaintiffs have either failed to identify with particularity the speech in which they engaged, or they have failed to show that they were speaking as public, rather than private citizens.  (See D.E. 117 at 40, 62-63, 80-81, 96-97, 132, 147; D.E. 92 at 25-26, 30, 37, 57, 65-66, 75).

To the extent Huff is alleging that her 2005 removal from her various positions was retaliation for bringing up the credit card expenditures to board member Hall in 2003, her claim is vitiated by the fact that two or three years passed between her speaking to Hall and the decision to remove her from the various positions.  See Barnard v. Jackson County, Mo., 43 F.3d 1218, 1226 (8th Cir. 1995)(at some point speech becomes so remote in time to discharge that court may rule as a matter of law that speech played no role in employee's termination) and Horwitz v. Board of Educ. of Avoca School Dist., 260 F.3d 602, 619(7th Cir. 2001)(when termination occurred 18 months after protected speech the events were too remote to infer that employee was terminated because of

speech).  In addition, Huff was appointed to the VPIS committee *after* she made the

comments, which does not support the conclusion that she was removed from the

committee because of her 2003 comments.  Finally, Huff stated in her deposition that she

believed Martinez wanted to remove her from the committee because he wanted to be

able to control it--not because he was retaliating against her (Huff Depo. at 50).  Huff has

failed to create a fact issue on her free speech claim and thus, summary judgment is

entered for defendants.

The same is true for Herrmann.  Her reporting of credit card irregularities to board

member Hall was too far removed in time from the negative consequences she alleges

were caused by the reporting.  In addition, Herrmann's statements to the Southern

Association of Colleges and Schools ("SACS") committee regarding the signing of

rosters, which she purports led to her being blamed for SACS probation, would not be

considered public speech because they were made in her role as an instructor at the

College.  For a public employee's speech to qualify for First Amendment protection, she

must be speaking as a citizen on a matter of public concern.  Nixon, 511 F.3d at 497.  An

employee is not speaking as a citizen, but rather in her role as an employee, when she

makes statements pursuant to her official duties.  Id. (citing Garcetti, 547 U.S. at 421, 126

S.Ct. at 1960).  Herrmann stated that the SACS accreditation committee asked the faculty

a series of questions, including whether anyone had signed a class roll for a class that they

never met.  Herrmann told them that she had done so in connection with some of the dual

credit classes she had taught in high schools.  She retrieved the rolls and gave them to the

SACS personnel (Herrmann Depo. at 86-88).  Her speech was made as part of her public job and therefore was not entitled to First Amendment protection.  <u>Garcetti</u>, 547 U.S. at 421, 126 S.Ct. at 1960.  Summary judgment is entered for defendants on plaintiff Richmond, Powell, Petersen, Millican, Herrmann and Huff's free speech claims.

Plaintiff Shiner has shown that a fact issue exists regarding her free speech claim, based on her telling Hisel that Cantu discriminated against Anglo students and faculty. The day after Shiner spoke to Hisel, Cantu also met with Hisel.  Immediately after talking to her, Cantu returned to his office, and angrily told Shiner that he was going to put a memorandum in her personnel file regarding an old and false allegation that had been made against her.  He also told Shiner that she would be demoted after Christmas.  He did not give her a reason and dismissed her from his office.

In addition, to the extent Shiner can show that the administrative defendants were involved in taking action against her for speaking out, they would not be entitled to the qualified immunity defense.  Because these facts could lead a jury to find that Shiner suffered retaliation for speaking out about perceived racism, summary judgment is denied on her first amendment claim.

**IV.  Shiner's False Imprisonment Claims**

Shiner alleges that she was falsely imprisoned by Martinez and Patton prior to being terminated on December 11, 2006.  The Texas Supreme Court describes a false imprisonment cause of action as follows:

> The essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law.  Sears Roebuck & Co. v. Castillo, 693 S.W.2d 374, 375 (Tex. 1985).  A detention may be accomplished by violence, by threats, or by any other means that restrains a person from moving from one place to another.  Martinez v. Goodyear Tire & Rubber Co., 651 S.W.2d 18, 20 (Tex.App.–San Antonio 1983, no writ).  Where it is alleged that a detention is effected by a threat, the plaintiff must demonstrate that the threat was such as would inspire in the threatened person a just fear of injury to her person, reputation, or property.  Id. at 20-21; Black v. Kroger Co., 527 S.W.2d 794, 796 (Tex.Civ.App.–Houston [1ˢᵗ Dist.] 1975, writ dism'd).

Randall's Food Markets, Inc., 891 S.W.2d 640, 644-645 (Tex. 1995).

The Magistrate Judge found that a fact issue precluded summary judgment based on Shiner's testimony that she believed she would be terminated if she left the room.  But even if Shiner subjectively believed that she would be terminated, the situation she has described does establish that she was falsely imprisoned by defendants.

Shiner cites Black, 527 S.W.2d at 801 to support her argument that one can be falsely imprisoned in the absence of law enforcement or actual restraint.  In Black the plaintiff was an 18-year-old woman with a tenth grade education who was working as a checker at a grocery store.  The store manager took her to a small room with a table and a few chairs where two people who worked for store security told Black that if she did not name the amount of money she had taken it would be a long time until she saw her family again, including her two-year-old daughter.  Black, 527 S.W.2d at 796.  Black was convinced that she was going to be put in jail and would not see her daughter for a long time.  Id. at 797.  The security personnel kept her in the room for about one and a half

hours and then under continued threats of going to jail, drove her to her bank to withdraw money they said she owed and had her call her sister to give her more money.  Id. at 798.

The court found that there was sufficient evidence to support the jury's finding of false imprisonment.  Id. at 802.  In particular, the court noted the Black's parents had worked for the store and had a healthy respect for the authority of the store manager; Black was obviously without extensive business experience; she was spoken to in a loud voice and accused of theft and she was threatened with imprisonment and with not seeing her daughter for a long time.  Id. at 800-801.

Shiner's case differs from <u>Black</u> in several respects.  Shiner was left alone in the room and was not physically impeded from leaving.  There was no appearance of police authority.  Although Patton told her not to leave the room, Patton did not tell her that she would be terminated if did leave.  Shiner left for lunch and voluntarily returned to the room.  Although it is unclear why defendants did not simply send Shiner home, or let her spend the day in another part of the College, the circumstances she described do not support a conclusion that she was falsely imprisoned.  The Court declines to adopt the Magistrate Judge's recommendation that defendants falsely imprisoned plaintiff and instead enters summary judgment for defendants on this issue.[3]

## V.  Remaining Claims

---

[3]In addition, although cases addressing false imprisonment recite that detention can be effected by threat of loss of property, no cases were found where threat of a job loss was cited in a finding of false imprisonment.  And, in any event, Shiner has not shown that she had a property interest in her job.

The Magistrate Judge's findings and conclusions are adopted in regard to plaintiffs' claims for state common-law invasion of privacy, constitutional rights to liberty and privacy and claims of conspiracy under 42 U.S.C. § 1985. Summary judgment is entered for defendants on those claims.

## VI.  Liability of Individual Board Defendants

At the hearing the Court found that there was no evidence that the individual board defendants took any action that violated the constitutional rights of any of the plaintiffs. Therefore, plaintiffs cannot overcome the individual board defendants' entitlement to qualified immunity. Summary judgment is granted in favor of defendants Jaure, Hogue, . Hall, Dirks, Dominguez, Lohse, and Moron and they are dismissed as defendants in this law suit.

## VII.  Pattern or Practice

In their pleadings and at the hearing plaintiffs made repeated reference to defendants engaging in a pattern or practice of discrimination. A pattern or practice case is not a separate cause of action under Title VII, but is another method of proving a disparate treatment case. Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 355 (5th Cir. 2001). In the Fifth Circuit, the pattern-or-practice method of proof is not available in private, non-class action lawsuits. Frank v. Xerox Corp., 347 F.3d 130, 136 (5th Cir. 2003)(citing Celestine, 266 F.3d at 355-356). Rather, plaintiffs must show that there is a genuine issue for trial either through direct evidence of discrimination, or through the McDonnell-Douglas burden-shifting framework. Celestine, 266 F.3d at 355.

24

Because this is a private, non-class action lawsuit, plaintiffs are foreclosed from seeking to prove their claims by showing that defendants engaged in a pattern or practice of discrimination.  The individual plaintiffs must show that CBC violated their rights under the appropriate Title VII framework.

### CONCLUSION

Based on the foregoing, summary judgment is DENIED on Richmond, Herrmann, Powell, Petersen, and Shiner's Title VII, 42 U.S.C. § 1981 and ADEA claims.  Summary judgment is GRANTED on Huff's Title VII, 42 U.S.C. § 1981 and ADEA claims, except for her Title VII hostile environment claim on which summary judgment is DENIED.  Summary judgment is DENIED on Millican's Title VII and 42 U.S.C. § 1981 race discrimination claims and GRANTED on her remaining claims.  Summary judgment is GRANTED on plaintiff Richmond, Huff, Herrmann, Millican, Powell and Petersen's 42 U.S.C. § 1983 free speech causes of action.  Summary judgment is DENIED on Shiner's free speech cause of action.  Summary judgment is GRANTED to defendants on all remaining claims.  Qualified immunity is GRANTED to CBC board defendants Paul Jaure, Grady C. Hogue, Jr., Louise W. Hall, R.W. Dirks, Emilia H. Dominguez, Carroll W. Lohse, and Fred Moron and all causes of action asserted against them are dismissed with prejudice.

ORDERED this 1st day of August, 2012.

_____
HAYDEN HEAD
SENIOR UNITED STATES DISTRICT JUDGE